IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANGELO M. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:14 CV 1157 SMY/RJD |
| | ) |
| DAVID G. MORRIS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 179.) Plaintiff Deangelo M. Jones is an inmate with the Illinois Department of Corrections. Defendants David Morris, Alex Jones and James Best are employees of the Illinois Department of Corrections. On October 14, 2014, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights. (Doc. 1.) Plaintiff now proceeds solely on Count 1 which alleges that Defendants retaliated against him for complaining about the conditions of his confinement. For the following reasons, Defendants' Motion for Summary Judgment is **DENIED**.

**BACKGROUND**

From February 9, 2011 to April 9, 2014, Plaintiff was incarcerated at Menard Correctional Center. (Doc. 51-1 at 10-11.) Defendant Alex Jones served as the assistant warden at Menard Correctional Center. (*Id.* at 41.) Defendant James Best served as a lieutenant and Defendant David Morris also served as correctional officer. (Doc. 1 at 2; Doc. 20 at 1.)

On February 9, 2014, Plaintiff, who was housed in protective custody, sent a letter to Jeannette Cowan, a caseworker at Menard Correctional Center, to complain that Defendant Morris and an unspecified lieutenant prevented him from using the telephone. (Doc. 51-1 at 39;

Doc. 68-1 at 47-48.) During his deposition, Plaintiff testified that, on February 19, 2014, Ms. Cowan approached him to discuss the letter and he told her about the denial of privileges, including telephone use, access to the commissary and shower time by Defendants Morris and Best. (Doc. 51-1 at 13-15.) Plaintiff also told Ms. Cowan that he had told Defendant Best about Defendant Morris, but that Defendant Best refused to address his complaint despite his status as a lieutenant. (*Id.* at 19-20.) During this conversation with Best, Morris passed through the room where the conversation took place, stood in the next room and overheard the conversation. (*Id.* at 15.)

At Menard Correctional Center, officers generally announced shower time and unlocked the cell doors for a short period to allow inmates to open the doors and leave their cells. (*Id.* at 23-25.) On February 24, 2014, Morris did not provide notice of shower time before unlocking the cell doors and locked the cell doors before many inmates had the chance to open them. (*Id.* at 25-26.) Plaintiff, who was able to open his cell door, complained to several correctional officers, including Morris, and was told to shut up and to return to his cell. (*Id.*) An unidentified correctional officer said, "We done got away with murders; we can do it again," which Plaintiff construed as a threat. (*Id.* at 27.) Several correctional officers, including Morris and Best, escorted Plaintiff to his cell. Plaintiff refused to leave his cell again that day. (*Id.* at 27-29.)

Later that day, Plaintiff spoke with Defendant Jones − with Defendants Best and Morris present − regarding the threat and other issues. (*Id.* at 29-30.) Plaintiff also sent Jones a letter with his complaints regarding shower time, cell doors and commissary access. (*Id.*; Doc. 68-1 at 49.) In the letter, he also advised Jones that he was told to sign out of protective custody (and

presumably to go to general population housing) when he complained. (*Id.*) Plaintiff also requested a transfer.[1] (Doc. 51-1 at 31; Doc. 68-1 at 49.)

Plaintiff also testified that on February 25, 2014, Morris and other officers made comments to him, such as, "We will get you." (Doc. 51-1 at 32-33.) On one occasion, Morris told another officer that Plaintiff did not like him and the other officer replied, "Fuck him." (*Id.*; Doc. 68-1 at 39.)

On February 26, 2014, Morris told Plaintiff that his cell would be searched. (Doc. 51-1 at 33.) Plaintiff dressed, was cuffed and placed in a shower. (*Id.* at 33-34.) Morris performed the search and a few minutes later, told Plaintiff that he found a stinger inside Plaintiff's cell.[2] (*Id.* at 34-35.) Morris submitted a disciplinary report indicating that a stinger was found in Plaintiff's cell and that Plaintiff had threatened him yelling, "You fucking bitch, I'm going to kill you and rape your wife once I get you, you fucking bitch." (Doc. 68-1 at 52.) Plaintiff testified that he did not have a stinger in his cell and further testified that Brandon James, a fellow inmate, informed him that the officers planted the stinger in Plaintiff's cell. (Doc. 55-1 at 37.) Plaintiff also denied that he threatened Morris. (Doc. 68-1 at 55-57.)

On the same day, Plaintiff sent a letter to Jones recounting the search and accusing Morris and Best of retaliation for his previous letter to Jones. (Doc. 68-1 at 50-51.) Plaintiff also denied possession of a stinger and that he threatened Defendant Morris. (*Id.*) He accused Best and Morris of fabricating the disciplinary report and requested an investigation and a polygraph test. (*Id.*) Jones never acted or otherwise responded to Plaintiff's letters. (Doc. 55-1 at 38, 40-41.)

---

[1] At his deposition, Plaintiff clarified that he meant a transfer to another unit at Menard Correctional Center rather than a transfer to another facility. (Doc. 51-1 at 51-52.)
[2] Plaintiff defines a "stinger" as a homemade electrical instrument used to heat water. (Doc. 68-1 at 40.)

3

According to the final summary report of the adjustment committee, a hearing was held on March 4, 2014 on the disciplinary report, which charged misuse of property, intimidation or threats and insolence. (Doc. 68-1 at 53-54.) In a personal statement submitted to the committee, Plaintiff denied the disciplinary report and charges and requested an investigation and polygraph test. (*Id.* at 55-57.) Inmates Brandon James and Corwyn Brown testified on Plaintiff's behalf that he did not threaten or curse Morris. (*Id.* at 53-54, 60, 65.) The hearing committee found Plaintiff guilty on all charges and imposed discipline, including six months of segregation. (*Id.*)

Plaintiff testified that he complained to Best about the disciplinary ticket on March 3, 2014. (Doc. 51-1 at 43-44; Doc. 68-1 at 41.) Best responded by telling Plaintiff to continue complaining as he had been and by threatening him with segregation. (*Id.*) On March 4, 2014, Morris acknowledged to Plaintiff that he knew about his complaints as he walked him to segregation. (Doc. 51-1 at 47.)

Inmate Brandon James attested to the following by affidavit (Doc. 68-1 at 63). On February 24, 2014, he overheard Plaintiff informing Jones that he feared for his safety due to his complaints of mistreatment. (*Id.*) Jones told Plaintiff to send him a letter. (*Id.*) Morris and Best told Plaintiff that if he continued to complain, he would regret it. (*Id.*) Morris also told Plaintiff, "We'll get ya." (*Id.*) On February 25, 2014, Morris and other correctional officers harassed Plaintiff throughout the day and asked him if he was going to chow "so he can get what he has coming." (*Id.*) When Plaintiff did not go to chow, the officers said, "We got you tomorrow." (*Id.*) On February 26, 2014, Morris took Plaintiff to the showers and conducted a search of his cell. (*Id.*) James observed Sergeant Schott bring Morris a stinger to plant in Plaintiff's property. (*Id.*)

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When faced with a motion for summary judgment, the Court shall "examine the record and all reasonable inferences in the light most favorable to the non-moving party." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Summary judgment must be denied "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party." *Id.*

Plaintiff alleges claims of First Amendment retaliation against Defendants Morris, Best and Jones. To establish a prima facie case of retaliation, Plaintiff must demonstrate that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

A prisoner's complaints regarding conditions of confinement constitute protected First Amendment activity. *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006). Moreover, "false charges resulting in being placed in segregation [is] conduct that would likely deter a person from filing another lawsuit." *Dobbey v. Johnson*, 2013 WL 5781943, at *3 (N.D. Ill. 2013); *see also McCutcheon v. Schnicker*, 2016 WL 1068821, at *3 (S.D. Ill. Feb. 8, 2016); *Dolis v. Robert*, 2014 WL 7530158, at *4 (S.D. Ill. Dec. 8, 2014). If Plaintiff establishes a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate that "[their] conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011).

*Defendant Morris*

Plaintiff alleges that Morris planted a stinger in his cell and fabricated a disciplinary report in retaliation for complaints regarding the conditions of confinement. Defendants argue that Plaintiff lacks evidence that First Amendment activity motivated Morris' submission of the disciplinary ticket and that Morris would have submitted the disciplinary ticket even if Plaintiff had not made the verbal complaints.

"To state a cause of action for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred." *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). Here, Defendants argue that the fact that one event occurred prior to the alleged retaliatory actions does not prove the first caused or motivated the second. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F. 3d 913, 918 (7th Cir. 2000); *Babcock v. White*, 102 F. 3d 267, 275 (7th Cir. 1996). However, Plaintiff does not rely on timing alone. Plaintiff testified that Morris overheard Plaintiff's complaints to Ms. Cowan on February 19, 2014 regarding Morris' treatment of Plaintiff and to Defendant Jones on February 24, 2014. Plaintiff has also provided evidence to show that on February 25, 2014, Morris told Plaintiff, "We'll get ya," and asked him if he was going to chow "so he can get what he has coming," and that correctional officers implied that Plaintiff would suffer retaliation when he refused to leave his cell.

There is also evidence in the record to support Plaintiff's allegation that, on February 26, 2014, Morris planted contraband in Plaintiff's cell, submitted a fabricated disciplinary report and that Plaintiff received six months of segregation as discipline as a result. In sum, the record contains evidence from which a jury may reasonably conclude that Morris had knowledge of Plaintiff's complaints, communicated his intent to retaliate against Plaintiff as a result and took adverse action against Plaintiff that served no legitimate purpose shortly thereafter.

Defendants' argument that Morris would have submitted the disciplinary ticket even if Plaintiff had not made the verbal complaints also cannot be determined as a matter of law. In support of the argument, Defendants state, "Plaintiff was housed in a cell without a cellmate where contraband was located in his property box." (Doc. 51 at 8.)  Although cell searches and discipline for the possession of contraband may be a matter of course, Defendants' argument fails to account for the evidence suggesting that Morris planted the contraband and fabricated a disciplinary report.  Accordingly, Plaintiff's claim against Defendant Morris survives summary judgment.

### *Defendant Jones*

Plaintiff alleges that Jones was aware of Morris' retaliatory conduct but turned a blind eye by failing to investigate or resolve his complaints regarding the fabricated disciplinary report. Defendants argue that supervisor liability is not available in § 1983 actions, that Jones lacks the requisite personal involvement and that Plaintiff claims only that Jones did not act as Plaintiff desired.

The principle of vicarious liability is not available in § 1983 cases.  *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).  "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."  *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).  "An official satisfies the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent."  *Id.*  "That is, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."  *Id.*  Moreover, "[A]n inmate's letters to prison administrators may establish a basis for § 1983 liability."  *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996).   Here, the record contains evidence that Plaintiff sent Jones a letter

informing him about Morris' retaliatory conduct and that Jones took no action in response. Thus, a reasonable jury could conclude that Jones knew Morris retaliated against Plaintiff and turned a blind eye. Accordingly, Defendants' Motion for Summary with respect to Defendant Jones is denied.

*Defendant Best*

Plaintiff has not clearly articulated whether he claims that Defendant Best retaliated against him based on his complaints or whether he claims that Best turned a blind eye to Morris' actions. (*See* Doc. 68 at 12.) In consideration of Plaintiff's pro se status, the Court will construe the claim to include both theories. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

Defendants contend that Plaintiff's claim is based only Best's statement to Plaintiff to "go complain about that like you have been doing," and argue that verbal harassment alone is insufficient to support a claim of retaliation. However, Plaintiff's claim is more detailed than Defendants suggest. Plaintiff alleges in his Verified Complaint that Best told him to continue complaining, threatened segregation when Plaintiff complained to him and took no action with regard to Morris' retaliatory conduct. (Doc. 1 at 12.) Plaintiff's testimony indicates that Best knew about Plaintiff's prior complaints. (Doc. 68-1 at 50-57, 60, 63.) Furthermore, Brandon James attested that, two days before the cell search, Best told Plaintiff that if he continued to complain, "he would regret it." Based on this evidence, a reasonable jury could conclude that Plaintiff's complaints motivated Best's decision not to investigate the disciplinary report. The evidence could also reasonably support a finding that Best knew of Defendant Morris' retaliatory conduct and took no action. Accordingly, the Court denies Defendants' Motion for Summary Judgment with respect to Defendant Best.

**Qualified Immunity**

8

In support of their motion, Defendants also assert the affirmative defense of qualified immunity. Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Thus, in order to evaluate a claim of qualified immunity, the Court engages in a two-step analysis. First, the Court considers whether a plaintiff's claim states a violation of his constitutional rights. Then, the Court determines whether those rights were clearly established at the time the violation occurred. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The unlawfulness of a particular official's action must be apparent "in light of the pre-existing law." *Id.* A party may demonstrate that a right was clearly established by presenting a closely analogous case establishing the defendant's conduct was unconstitutional or by presenting evidence the defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court. *See Hope*, 536 U.S. at 739–40.

Defendants argue that the record does not adequately support Plaintiff's claims and to hold otherwise would be a departure from established case law. The Court disagrees. Defendants' arguments fail to address significant portions of the evidentiary record including

9

Plaintiff's testimony that he did not have contraband in his cell, Brandon James' attestation that Defendant Morris planted the contraband and the letters sent by Plaintiff to Defendant Jones.

As previously noted, Plaintiff's claims that Morris and Best retaliated against him for complaining about his conditions of confinement and that Best and Jones turned a blind eye to Morris' retaliatory conduct adequately allege constitutional violations against these defendants. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). Moreover, taking Plaintiff's allegations as true, a reasonable official would have understood that Defendants' conduct violated Plaintiff's constitutional rights. Therefore, the defendants are not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 50) is denied. Count 1 shall proceed to trial against Defendants David Morris, Alex Jones and James Best. Counsel will be recruited to represent Plaintiff Deangelo Jones at trial.

**SO ORDERED.**

**DATED: December 19, 2016**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**